68 F.3d 477
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Mildred NIGRELLI, Plaintiff-Appellant,
v.
CATHOLIC BISHOP OF CHICAGO, Defendant-Appellee.
 No. 94-2528.
 United States Court of Appeals, Seventh Circuit.
 Submitted May 10, 1995.
Decided Oct. 11, 1995.
 
 Before POSNER, Chief Judge, and WOOD, Jr. and COFFEY, Circuit Judges.
 
 ORDER
 
 1
 Mildred Nigrelli seeks to vacate a final judgment of the district court and rescind a settlement agreement that she made with the Catholic Bishop of Chicago. The district court denied Nigrelli's motion and she appeals. We affirm.
 
 I. Background
 
 2
 In 1984, Mildred Nigrelli brought suit against the Catholic Bishop of Chicago under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e et seq. On January 25, 1993, the district court dismissed the case, holding that the parties had entered into a written settlement agreement, signed on January 28, 1993. The district court's order provided that "the terms of the settlement agreement are to remain confidential and may not to be disclosed by any person,"[1] and the agreement has been filed under seal. The agreement contained an integration clause, which provided:
 
 
 3
 This Agreement constitutes the entire Agreement between the parties, and no representations, agreements, or understandings of any kind, either written or oral, shall be binding upon the parties unless expressly contained herein. This Agreement is a complete and exhaustive statement of the terms of the parties' agreement, which may not be explained or supplemented by evidence of consistent additional terms or contradicted by evidence of any prior or contemporaneous agreement. No modification of this Agreement shall be effective unless it is in writing and signed by each of the parties.
 
 
 4
 One year after the agreement had been entered into and the case had been dismissed, Nigrelli filed a motion seeking to vacate the final judgment under Federal Rule of Civil Procedure 60(b)(3), claiming that because the Catholic Bishop had committed a material breach of the agreement, the agreement should be rescinded and the case reopened. Although the Catholic Bishop had upheld all conditions of the written agreement, Nigrelli in her pleadings alleged that the parties had entered into a prior oral agreement, the terms of which the Catholic Bishop had not satisfied. The district court denied the motion on two grounds: first, the written agreement by its very clear and unambiguous language recited that it was the final, exclusive agreement and the Catholic Bishop had fully complied with it, and second, as a contractual matter, Nigrelli had not fully tendered the consideration paid to her, required for rescission of the agreement.[2] Nigrelli appeals.
 
 II. Analysis
 
 5
 Federal Rule of Civil Procedure 60(b)(3) provides relief from judgment for the misconduct of an adverse party.[3] "It is well-established that Rule 60(b) relief is 'an extraordinary remedy and is granted only in exceptional circumstances.' " Dickerson v. Board of Educ. of Ford Heights, 32 F.3d 1114, 1116 (7th Cir.1994) (quoting Harold Washington Party v. Cook County, Illinois Democratic Party, 984 F.2d 875, 879 (7th Cir.), cert. denied 114 S.Ct. 86 (1993)). Our review of a district court's denial of a Rule 60(b) motion to set aside a final judgment is exceptionally deferential. Williams v. United States Drug Enforcement Admin., 51 F.3d 732, 735 (7th Cir.1995). "We review for abuse of discretion, and the district court's order stands unless no reasonable person could have acted as the judge did." United States v. Golden Elevator, Inc., 27 F.3d 301, 303 (7th Cir.1994). "The restricted scope of review responds to the interest all parties have in finality." Tolliver v. Northrop Corp., 786 F.2d 316, 318 (7th Cir.1986).
 
 
 6
 Nigrelli's alleged reason for attempting to reopen the dismissed suit is that she contends that the Catholic Bishop has allegedly breached the agreement that was the basis for the dismissal. That breach, Nigrelli asserts, is so substantial as to require rescission of the settlement agreement and reopening the case under the "misconduct" provision of Rule 60(b)(3). See e.g. Keeling v. Sheet Metal Workers Int'l Assn., 937 F.2d 408, 410 (9th Cir.1991) ("Repudiation of a settlement agreement that terminated litigation pending before a court constitutes an extraordinary circumstance, and it justifies vacating the court's prior dismissal order").
 
 
 7
 A settlement agreement is a contract and generally the construction and enforcement of settlement agreements is governed by principles of local law applicable to contracts. Laserage Tech. v. Laserage Lab., 972 F.2d 799, 802 (7th Cir.1992). Both parties agreed that the written terms of the settlement agreement were clear and that the law of Illinois governs their dispute. Accordingly, the district court applied the contract law of Illinois, finding that the Catholic Bishop had not breached any of its promises to Nigrelli. However, Nigrelli's case originated with a federal claim of employment discrimination under Title VII. We recently noted that it remains unsettled in this Circuit whether a dispute over the settlement of a federal claim arises under state law or under federal law; and whether, if federal law applies, state law should be adopted as the rule of decision unless doing so would disserve federal interests. Fleming v. United States Postal Service, 27 F.3d 259, 258 (7th Cir.1994). Like Nigrelli's case, the settlement dispute in Fleming arose from a Title VII claim, and in Fleming we applied general principles of contract law, finding no practical difference between federal and state law on the question. Id. Although neither party raises the issue, we have reviewed the record and conclude that because the settlement dispute is sufficiently attenuated from the original federal claim, no federal interests would be disserved by applying the law of Illinois; thus, we adopt Illinois law as the rule of decision in this case. Accordingly, we turn to the law of Illinois to determine whether rescission of the settlement agreement is appropriate.
 
 
 8
 "Rescission of a contract refers to cancellation of the contract so as to restore the parties to the status quo ante, the status before the contract." Newton v. Aiken, 633 N.E.2d 213, 215 (1994). The remedy of rescission is equitable, and its application is largely left to the discretion of the trial judge. Solar v. Weinberg, 1995 WL 461873 at * 5 (Ill.App. Aug. 4, 1995) (citing Klucznik v. Nikitopolous, 503 N.E.2d 1147 (1987)). A party is entitled to rescission only where there has been "substantial nonperformance or breach" by the other party. Farmer v. Koen, 542 N.E.2d 1327, 1327 (1989). Substantial nonperformance exists where "the matter, in respect to which the failure of performance occurs, is of such a nature and of such importance that the contract would not have been made without it." Trapkus v. Edstrom's Inc., 140 Ill.App.3d 720, 725, 489 N.E.2d 340, 345, 95 Ill.Dec. 119, 124 (1986).
 
 
 9
 Thus, the question becomes whether the Catholic Bishop substantially breached the settlement agreement. We have reviewed the written agreement and find that its terms and conditions are clear and unambiguous: they provide for an exchange of specific consideration between the parties. Nigrelli concedes that the Catholic Bishop has upheld all conditions within the written agreement. However, Nigrelli claims that the alleged breach concerns an oral condition made prior to the written agreement. The Catholic Bishop points out that the written agreement contains an integration clause, specifically stating that the conditions of the written agreement are complete and exclusive of all prior understandings and conditions between the parties. Nigrelli responds that the written agreement, although appearing complete, is in fact ambiguous, and she seeks to introduce parol and extrinsic evidence that the parties intended to be bound by the oral condition as well as the conditions of the written agreement. See Wikoff v. Vanderveld, 897 F.2d 232, 238 (7th Cir.1990) ("if the trial court determines that the language of the contract is ambiguous, the court may then consider (or admit into evidence for the jury's consideration if the jury is the trier of fact) extrinsic or parol evidence, in addition to the contractual language, to ascertain the intent of the parties.").
 
 
 10
 In Home Ins. Co. v. Chicago & Northwestern Transp. Co., 56 F.3d 763 (7th Cir.1995), we examined the principles of Illinois contract law with respect to the introduction of parol and extrinsic evidence to aid in the interpretation of allegedly ambiguous contracts. Illinois cases, and our own cases construing Illinois law, can be recognized as dealing with two types of ambiguity in contracts: intrinsic and extrinsic. Id. "A contract may be internally unclear or inconsistent as when it is 'reasonably and fairly susceptible to more than one meaning' and thus, intrinsically ambiguous." Id. (quoting Lenzi v. Morkin, 116 Ill.App.3d 1014, 72 Ill.Dec. 414, 416, 542 N.E.2d 667, 669 (1983)). Or a contract may be extrinsically ambiguous where although the language reads clearly and consistently, someone who knew the context of the contract would understand that it means something other than what appears to mean. Id. In situations of extrinsic ambiguity, we distinguish between "subjective" and "objective" evidence of ambiguity, the former being inadmissible. "Subjective" evidence as to what a facially clear contract means is "the testimony of the parties themselves as to what they believe the contract means," which is invariably self-serving, inherently difficult to verify and thus, inadmissible. Id. (quoting AM International Inc., 44 F.3d at 575). "Objective" evidence, on the other hand, is evidence that can be supplied by disinterested third parties, such as custom or usage of the trade. Id. "We permit objective evidence--that supplied by disinterested third parties such as custom or trade usage--because the parties to a contract have a limited ability to fabricate such information." Pierce v. The Atchison, Topeka & Santa Fe Railway Co., Nos. 94-3057 & 94-3093, slip op. at 6 (7th Cir. August 30, 1995) (citing AM International, 44 F.3d at 575). There are, however, exceptions to the rule that only objective evidence can be used to alter the meaning of a clear contract, as when the parties agree to an idiosyncratic meaning, or when fraud is charged. Home Ins. Co. 56 F.3d at 769 (citing AM International, 44 F.3d at 575-76). As a further protection to uphold the dignity of a contract, before any extrinsic evidence which may serve to modify the terms of the contract can be received in evidence, the trial court must first evaluate the extrinsic evidence and conclude that an ambiguity does exist in the contract, and then, and only then, may the parol or extrinsic evidence be presented to the trier-of-fact. Sunstream Jet Express v. International Air Serv., 734 F.2d 1258, 1268 (7th Cir.1984).
 
 
 11
 Turning to the contract in Nigrelli's case, both parties agree that there is no intrinsic ambiguity: the written terms are clear and consistent. Our next inquiry is whether any evidence may be available to establish extrinsic ambiguity. Nigrelli offered an affidavit attesting to her belief that the oral condition was part of the understanding between the parties when she signed the written settlement agreement. However, this affidavit is subjective evidence and is therefore inadmissible. See Reynolds v. Coleman, 527 N.E.2d 897, 903 (1988). Nigrelli argues that the actions of the Catholic Bishop in fulfilling the oral agreement was consistent with her theory of the settlement agreement. However, the Bishop's actions can be interpreted in several ways and after reviewing the record we find no abuse of discretion in the district court's decision that the Bishop's actions referred to did not indicate an acceptance of Nigrelli's oral condition. Thus, the evidence referenced fails to establish that the parties intended the conditions of settlement to be anything other than those contained in the written settlement agreement.
 
 
 12
 Having determined that the written settlement agreement is neither intrinsically nor extrinsically ambiguous, we further hold that the district court committed no abuse of discretion in finding that the Catholic Bishop has fully complied with its terms. Thus, there has been no breach of the parties' settlement agreement, let alone the substantial nonperformance that would warrant the extraordinary remedy of relief from judgment. Although Nigrelli may not be satisfied with the outcome of her settlement, "[a] contract fairly entered into cannot be avoided or disregarded by one of the parties because he discovers that the contract is less profitable to him than he anticipated when he entered into it." Diedrich v. N. Illinois Publishing Co., 350 N.E.2d 857, 862 (1976).
 
 III. Conclusion
 
 13
 The judgment of the district court is AFFIRMED.
 
 
 
 [1]
 Because of the confidential nature of the settlement agreement, the parties have followed the procedures outlined in Matter of Grand Jury Proceedings: Krynicki, 983 F.2d 74, 77 (7th Cir.1992) ("[a]ny part of the record that must remain secret ... may be discussed in sealed appendices to the briefs, but the briefs themselves, including all of the legal argument, belong in the public domain"). Accordingly, our discussion of the case does not include any details of the agreement
 
 
 [2]
 Applying general principles of contract law, Fleming v. United States Postal Service, 27 F.3d 259, 261 (7th Cir.1994), held that rescission of a settlement agreement required full tender of the original consideration. On appeal, Nigrelli has offered that full tender "could" be achieved upon remand. In light of our holding that there has been no breach of the agreement, we need not decide if Nigrelli's offer is adequate
 
 
 [3]
 The relevant provision of the Rule reads as follows:
 (b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc. On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons:
 * * *
 (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party.
 Fed.R.Civ.P. 60(b)(3).